**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                        :
HAKIM NEBLETT,                          :
                                        :
                    Petitioner,         :
                                        :          Civil Action No. 05-5172 (JAG)
          v.                            :
                                        :                   **OPINION**
UNITED STATES OF AMERICA,               :
                                        :
                    Respondent.         :
_____ :


**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion of the United States (the

"Government") to dismiss Hakim Neblett's ("Petitioner") 28 U.S.C. § 2255 Petition, pursuant to

FED. R. CIV. P. 12(b)(6).  The Government argues that Petitioner waived his right to file any

habeas application, and that Petitioner fails to state a claim upon which relief can be granted.  For

the reasons set forth below, the Government's motion is granted, with prejudice.

## PROCEDURAL HISTORY

On February 11, 2002, a federal grand jury in the United States District Court for the

District of New Jersey issued a fifteen-count indictment charging Petitioner, and his co-

defendant, with various drug trafficking offenses.[1]  Petitioner, on December 15, 2003, pled guilty

_____

[1] Count One of the indictment charged Petitioner, and his co-defendant, with conspiracy
with the intent to possess and distribute controlled substances containing detectable amounts of
marijuana and phencyclidine ("PCP").  (Grand Jury Indictment 1.)  Counts Two through Fifteen
charged Petitioner, and his co-defendant, with separate incidents of possession with the intent to

1

to Count Fourteen, which charged him with distribution of, and possession with the intent to distribute, a quantity of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  (Plea Hr'g Tr. 15.)  The parties agreed that such offense required a total offense level of 32.  (Plea Agreement 6.)  Petitioner also agreed to forego any appeal, or collateral attack, of the sentence if the court determined the total offense level to be equal to, or less than, 29.  (Id. at 6-7.)  On June 21, 2004, Petitioner was sentenced to 151 months in prison and three years of supervised release.  (Sentencing Tr. 27:25-28:1-5.)  Petitioner filed the instant pro se Petition on October 28, 2005.

## STATEMENT OF FACTS

On February 8, 2002, Petitioner was arrested and charged with "knowingly and intentionally distributing, and possessing with the intent to distribute, a quantity of heroin," in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  (Pet. Mem. in Supp. of Mot. to Vacate 1.)  On October 21, 2003 the United States Attorney's Office for the District of New Jersey proposed a plea agreement.  (Id. at 8.)  Petitioner and his counsel signed the plea agreement on November 7, 2003.  (Id.; Ex. 11.)  Under the terms of the plea agreement, Petitioner stipulated to a base offense level of 32, as a career offender under Sections 2D1.1 and 4B1.1 of the Sentencing Guidelines.  (Plea Agreement 6.)  Further, the parties agreed to a three-point reduction, from the base offense level, if Petitioner accepted responsibility for the offense and entered a guilty plea.  (Id. at 6-7.)  Finally, Petitioner voluntarily waived his right to file an appeal, or collateral attack, including any motion under § 2255.  (Id.)  Specifically, paragraph four of the plea agreement states:

Hakim Neblett knows that he has, and voluntarily waives, the right to file any

distribute, and distribution of PCP, marijuana, and heroin.  (Id. at 2-3.)

2

appeal, any collateral attack, or any other writ or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentencing court's determination or imposition of the offense level, if the total offense level determined by the court is equal to or less than 29 . . . . The provisions of this paragraph are binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein.  Furthermore, if the sentencing court accepts a stipulation, both parties waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so.  To the extent that any appeal, collateral attack, writ, or motion is barred by this paragraph, the parties agree that it should be dismissed.

(Id.)

On December 15, 2003, this Court held a plea hearing.  (Pet. Mem. in Supp. of Mot. to Vacate 9.)  During the hearing, this Court discussed the waiver of appeal provision with Petitioner, and confirmed that Petitioner had reviewed the provision with his attorney, understood the provision, entered into it voluntarily, and had no questions for this Court about the provision.  (Plea Hr'g Tr. at 14:6-25.)  Petitioner then pled guilty to one count of the indictment charging him with distribution of, and the intent to distribute, a quantity of heroin.  (Id. at 8.)

On June 21, 2004, this Court held a sentencing hearing.  (Id. at 10.)  Prior to this hearing, Petitioner, arguing that the career offender classification "over-represented[ed] the seriousness of his criminal history," filed motions for a departure from the stipulated offense level of 29.  (Id. at 9.)  This Court denied Petitioner's motion for a downward departure and calculated Petitioner's total offense level as 29.  (Id. at 10.)  The Petitioner did not object to this Court's total offense level calculation.  (Sent. Tr. 20:18.)  This Court sentenced Petitioner to serve a prison term of 151 months with supervised release, upon completion of the term of imprisonment, for three

years.  (Sent. Tr. 27:25-28:1-5).

## LEGAL STANDARDS

Section 2255 allows a prisoner in custody to file a petition for a writ of habeas corpus with the sentencing court on the grounds that: (1) the imposed sentence violated the United States Constitution or laws; (2) the court did not have jurisdiction; (3) the sentence exceeded the maximum allowed by law; or (4) the sentence is subject to collateral attack on other grounds. See 28 U.S.C. §2255.  "[A] motion to vacate [a] sentence under 28 U.S.C. § 2255 is addressed to the sound discretion of the district court."  United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980).  Unless it appears conclusively from the motion, files, and records that the petitioner is not entitled to relief, the district court must grant the petitioner an evidentiary hearing on the matter.  See id.

## DISCUSSION

Petitioner seeks to vacate his sentence on three grounds.  First, Petitioner argues that this Court erred in classifying him as a career criminal.  Second, Petitioner claims his counsel provided ineffective assistance in violation of the Sixth Amendment.  Finally, Petitioner argues that his sentence was improperly calculated under the Sentencing Guidelines.  This Court, however, need not reach these issues to resolve this motion because Petitioner signed a waiver of the right to appeal.

In United States v. Khattak, the Third Circuit held that "waivers of appeals should be strictly construed."  United States v. Khattak, 273 F.3d 557, 562 (3d Cir. 2001).  The Circuit reasoned that although it may seem unfair to bargain away meritorious appeals, it affords the

4

defendant an opportunity to obtain a sentence range or ceiling.[2]  Id.

The Third Circuit did not adopt a "blanket rule," however, that prohibits all review of waivers.  Khattak, 273 F.3d at 562.  There may be circumstances warranting an invalidation of a waiver of appeal.  Id.  To determine whether a particular sentencing error may allow for retraction of a waiver, the Third Circuit adopted the same considerations set forth by the First Circuit in United States v. Teeter, 257 F.3d 14 (1st Cir. 2001).  United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005).  The Khattak Court concluded that "the governing standard to apply in these circumstances is whether the [sentencing] error would work a miscarriage of justice."  Khattak, 273 F.3d at 563.  Therefore, waivers of appeal are valid and enforceable as long as they are: (1) "entered into knowingly and voluntarily," and (2) do not "work a miscarriage of justice."  Id.

### A.      Knowingly and Voluntarily

Petitioner had two opportunities to challenge the plea agreement; yet, he declined to do so.  Petitioner's first opportunity occurred when the Government proposed the plea agreement, which contained an explicit waiver clause.  (Plea Agreement 6-7.)  The terms of the plea agreement are set forth, in detail, in the Government's letter to Petitioner's counsel.  (Letter from Scott A. Resnik, Assistant United States Attorney, to Marianne Espinoza Murphy, counsel for Petitioner (October 21, 2003)).  Rather than challenging the plea agreement, both Petitioner and his attorney signed the agreement on November 7, 2003.

Petitioner's second opportunity occurred on December 15, 2003 during the plea hearing.

---

[2] For instance, in this case, the Plea Agreement granted Petitioner a degree of certainty regarding his eventual sentence, and barred the Government from prosecuting him for the other fourteen counts in the indictment.

This Court questioned Petitioner regarding his plea agreement, and specifically inquired into whether Petitioner knowingly and voluntarily waived his right to file an appeal, or a § 2255 petition.  Again, Petitioner made clear to this Court that he understood the terms of the agreement, and signed it willingly.  This Court asked the following questions:

> Q:    As I understand it, there is a conditional waiver of the right to appeal the sentence in this agreement.  Have you discussed this conditional waiver of the right to appeal with your attorney?
>
> A:    Yes, I did.
>
> Q:    Have you had an opportunity to have her explain what a conditional waiver of the right to appeal the sentence is?
>
> A:    Yes.
>
> Q:    Do you have any questions about what a conditional waiver of the right to appeal is now?
>
> A:    No, sir.
>
> Q:    Do you understand that in certain circumstances, as set forth in the plea agreement, if you are sentenced within a particular range, you will not have the right to appeal the sentence?  Do you understand that?
>
> A:    Yes.
>
> Q:    Did you enter this conditional waiver of the right to appeal the sentence knowingly and willfully?
>
> A:    Yes.

(Plea Hr'g Tr. at 14:6-25.)  This colloquy satisfies this Court that Petitioner knowingly and voluntarily waived his right to appeal.

Petitioner argues, however, that his capacity to knowingly and willfully enter into the plea agreement was limited by imperfect knowledge at the time the agreement was reached.  More

specifically, Petitioner argues that he could not have knowingly waived the right to appeal a sentence that was based on an unconstitutional sentencing scheme.  (Pet. Reply Br. in Supp. of Mot. to Vacate 2.)

The Third Circuit, however, has rejected this argument.  See United States v. Lockett, 406 F.3d 207, 213 (3rd Cir. 2005) ("[A]bsent misrepresentation or other impermissible conduct by state agents, . . . a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." (quoting Brady v. United States, 397 U.S. 742, 757 (1970)).  [A] valid plea agreement, after all, requires knowledge of existing rights, not clairvoyance."  Lockett, 406 F.3d at 213 (quoting United States v. Bradley, 400 F.3d 459, 461 (6th Cir. 2005)).  Neither a plea agreement nor an appellate waiver will be rendered unknowing or involuntary merely because a later court decision expands a right waived in an agreement.  Lockett, 406 F.3d at 213.

At the plea hearing, the Petitioner testified, under oath, that he understood the terms of the plea agreement.  This Court reviewed the terms of the agreement with the Petitioner, including the stipulated Guidelines range.  On this record, this Court has no doubt that the Petitioner fully understood that, as a consequence of entering into the plea agreement, he would have no right to appeal the imposition of a sentence that fell within the stipulated Guidelines range.  The Petitioner's plea was voluntary, and was made with full knowledge of federal sentencing law applicable at the time.

### B. Miscarriage of Justice

To determine whether a waiver of the right to appeal amounts to a miscarriage of justice, courts should consider, among other things, "[t]he clarity of the error, its gravity, its character . . .

7

the impact of correcting the error on the government[,] and the extent to which the defendant acquiesced in the result." Khattak, 273 F.3d at 563 (citation omitted).  These factors relate to circumstances where an error has occurred, such as when issues relate to facts or Sentencing Guidelines.  Id. at 562-63 (citation omitted).  Enforcing the waiver will not amount to a miscarriage of justice when, as in this case, there is no error.

Petitioner argues that this Court erred in classifying him as a career offender.  Petitioner's claims for ineffective assistance of counsel also stem from Petitioner's disagreement with his career offender classification.  Petitioner contends, first, that by challenging the career criminal classification he is not challenging the Court's determination of the offense level, which is barred by the waiver in the plea agreement.  This argument is without merit.  The career offender classification is part and parcel of the Court's determination of the offense level.  Waivers of appeal, including the waiver of the right to challenge the court's imposition, or determination of a sentence, will bar a collateral attack of a career offender classification.  United States v. Woodbury, 181 Fed. App'x 369, 372 (4th Cir. 2006); United States v. Longwell, 162 Fed. App'x 673, 674 (8th Cir. 2006).

Petitioner also argues that the error in the offense level is so egregious as to rise to a "miscarriage of justice" and undo his waiver.  This argument, too, is without merit.  Petitioner argues that his classification as a career offender was erroneously based on the finding that the crime of second degree eluding the police, in violation of N.J. Stat. Ann. 2C:29-2b, is a crime of violence.  The crime of eluding police has been recognized as a crime of violence.  United States v. Reyes, 56 Fed. App'x 559, 561-62 (3d Cir. 2002) (holding that the statutory language of N.J. Stat. Ann. 2C:29-2b defines eluding police as a crime of violence).  Therefore, this Court finds

no error in such determination.

In addition, Petitioner's counsel cannot be considered ineffective for failure to object to Petitioner's classification as a career offender.  In order to prove ineffective assistance of counsel, Petitioner is required to show objectively unreasonable conduct and resulting prejudice. Strickland v. Washington, 466 U.S. 668, 694 (1984).  In other words, Petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the proceeding would have been different.  Id.  Here, Petitioner has not shown either unreasonable conduct or prejudice.  Specifically, the error upon which Petitioner spends the most time, the error in failing to challenge his career offender status, is no error at all.  Thus, there can be no miscarriage of justice.  See United States v. Coates, 2007 WL 1655736 at *2-3 (3d Cir. Jun. 8, 2007) (holding that no miscarriage of justice existed where there was no error in considering the petitioner a career offender).

Petitioner's final allegation of error is in his sentence calculation.  That error is also based on Petitioner's argument that he was incorrectly classified as a career offender.  As no such error occurred, there can be no  "miscarriage of justice" in applying the waiver to Petitioner's sentence calculation argument.

## CONCLUSION

For the reasons set forth in this Opinion, the United States' motion to dismiss is granted, with prejudice.  Additionally, because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.

Date:  October 18, 2007

      S/Joseph A. Greenaway, Jr.          
      JOSEPH A. GREENAWAY, JR., U.S.D.J.